UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEDAPATI REDDY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 05 C 639 |
| ) | |
| JOAN A. SCHELLHORN and ) | Judge Rebecca R. Pallmeyer |
| LaSALLE BANK CORPORATION, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Medapati Reddy, a participant in the ABN AMRO North America, Inc. Consumer & Commercial Clients Shared Services Severance Plan (the "Plan"), brought this action against Defendant Joan A. Schellhorn, as plan administrator, for failing to provide Plaintiff with a copy of the Plan document upon written request as required by section 104(b)(4) the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1024(b)(4) (2005). Plaintiff requests the maximum $110 per day statutory penalty for each day Defendant failed to provide the Plan. The parties have filed cross-motions for summary judgment.

**FACTUAL BACKGROUND**

The relevant facts, based on the parties' Local Rule 56.1 statements and attachments, are as follows.[1]

LaSalle Bank Corporation ("LaSalle") employed Plaintiff from July 1, 1999 until April 12, 2002, when LaSalle eliminated Plaintiff's position. Pl.'s Local Rule 56.1 Statement of Material Facts to Which there is No Genuine Issue (hereinafter, "Reddy LR 56.1 Stmt.") ¶ 3. Upon his termination on April 12, 2002, Plaintiff was offered nine weeks' severance pay if he signed a waiver and

---

[1] This court has jurisdiction under ERISA, 29 U.S.C. § 1132(e)–(f). Venue is proper because the plan is administered in this district. See id. at § 1132(e)(2); Def.'s Statement of Material Facts as to Which There is No Genuine Issue and Statement of Add'l Facts in Response to Pl.'s Motion for Summ. J. (hereinafter "Def.'s LR 56.1 Stmt."), ¶ 4.

release, *id*. at ¶ 6, and he received a copy of the ABN AMRO North America, Inc. Consumer & Commercial Clients Shared Services Severance Pay Plan Summary Plan Description (the "SPD"). *See* Def.'s LR 56.1 Stmt. ¶ 6.[2] The SPD contains the following disclaimer:

> This Summary Plan Description is merely an explanation and should not be relied upon other than as a general summary of the features of the Plan. Your rights are governed by the terms of the Plan document itself. You should refer to the Plan document for complete information for any rights and obligations you have under the Plan.

*See* SPD, Ex. A to Appendix to Plaintiff's Mem. of Law in Opp'n to Def.'s Summ. J. Motion and Reply Brief in Support of His Summ. J. Motion and as Part of Plaintiff's Decl (hereinafter, "Reply App.").[3] On April 29, 2002, Plaintiff executed the waiver and release agreement, and began receiving severance payments. Reddy LR 56.1 Stmt. ¶ 8–10. Plaintiff received approximately four and a half weeks of severance pay, calculated from the day he was laid off, before LaSalle stopped paying Plaintiff for allegedly failing to return a company-owned laptop computer as required by the Plan. *Id*. at ¶ 11; *see also* June 4, 2002 McPhereson/Reddy Letter, Ex. B to Reply App. (letter

---

[2] Defendant points out that Plaintiff, who is proceeding pro se, includes "additional facts" in his responses to Defendant's Local Rule 56.1 statement, and that several of the responses are argumentative. *See* Def.'s Reply Mem. in Support of Her Motion for Summ. J. (hereinafter, "Def.'s Reply"), at 11–13. Comparing Plaintiff's and Defendant's Local Rule 56.1(a) statements, the court concludes that the parties largely agree on the relevant facts. By ignoring those portions of Plaintiff's 56.1(b) responses which stray into argument or inappropriately include additional facts, the court believes it can rectify any defects in Plaintiff's submission without prejudicing Defendant.

[3] Defendant pointed out in her opposition brief that Plaintiff attached exhibits to his Local Rule 56.1 statements, including the SPD, the plan description and correspondence with Defendant Schellhorn, without including an affidavit authenticating the documents. In response to Defendant's argument that certain statements of fact based on those documents should be "stricken or ignored," Plaintiff reattached the exhibits to its reply brief together with his declaration authenticating the documents. The court concludes that Plaintiff thereby cured any supposed defect in his original submission. Moreover, the court notes that Defendant admitted, in whole or in part, nearly all of the statements of fact she asks to court to strike, including some based on the Plan documents, *see, e.g.*, Reddy LR 56.1 Stmt. ¶ 9, and others based on documents that Defendant independently submitted as attachments to *her own* Local Rule 56.1 statement. *Compare id*. at ¶ 14 (citing Plaintiff's August 22, 2003 letter), *with* Def.'s LR 56.1 Stmt. ¶ 10 (same). The court concludes that Defendant does not seriously question whether Plaintiff's exhibits are what they purport to be.

communicating decision to suspend severance pay). On October 1, 2002, Plaintiff filed an unrelated discrimination charge against LaSalle with the Illinois Department of Human Rights, alleging that LaSalle fired Plaintiff in retaliation for "openly complaining about unlawful discrimination on the basis of my national origin, India." Reddy LR 56.1 Stmt. ¶ 13; Charge of Discrimination, Ex. D to Reply App., at 1.

On August 22, 2003, Plaintiff sent Defendant a letter appealing LaSalle's decision to suspend his severance pay and requesting a copy of the "original Plan document." Reddy LR 56.1 Stmt. ¶ 14.[4] This letter quotes extensively from the SPD, asserting that Defendant had violated specific Plan provisions by suspending Plaintiff's severance pay. *See* August 22, 2003 Reddy/Schellhorn Letter, Ex. E to Reply App. Plaintiff wrote to Defendant again on September 27, 2003, notifying her that he had not received a response to his August 22, 2003 letter. *Id.* at ¶ 15. Defendant responded by letter dated October 31, 2003, requesting proof that Plaintiff had returned his laptop computer, but not including a copy of the requested Plan document. *Id.* at ¶ 16. On November 7, 2003, Plaintiff responded that he had returned the laptop upon termination (asserting as proof the fact that LaSalle had commenced payment, *id.* at ¶ 17), but did not reiterate his prior request for the Plan document. *See* November 7, 2003 Reddy/Schellhorn Letter, Ex. H to Reddy LR 56.1 Stmt., at 1. Plaintiff did reference his earlier correspondence in the subject-heading of the November 7, 2003 letter, however. *Id.* ("Ref . . . My Letter Dt: 08/22/03"). Defendant did not respond to Plaintiff's letter, prompting another letter on April 26, 2004 asking Defendant to reinstate Plaintiff's severance pay and again requesting a copy of the "original Plan Document." Reddy LR 56.1 Stmt. ¶ 18.

In a letter dated May 4, 2004, Defendant informed Plaintiff that a member of LaSalle's legal department would respond to Plaintiff's letter and provide a copy of the "Shared Services Pay Plan."

---

[4] The record does not disclose why Plaintiff waited more than a year before formally appealing LaSalle's decision to suspend his severance pay.

*See id.* at ¶ 19; May 4, 2004 Schellhorn/Reddy Letter, Ex. J to Reply App. On July 1, 2004, Plaintiff filed a complaint against LaSalle with the Illinois Human Rights Commission based upon his October 1, 2002 discrimination charge. Reddy LR 56.1 Stmt. ¶ 20. Defendant, and not a representative of LaSalle's legal department, followed up her previous letter on July 9, 2004, denying Plaintiff's appeal to reinstate his severance pay and enclosing another copy of the SPD. *Id.* at 21. The parties did not correspond further before Plaintiff filed this action on February 3, 2005 alleging that Defendant Schellhorn and LaSalle failed to meet their obligations under ERISA § 1024(b)(4). *Id.* at 24.[5]

This suit brought a swift response. On February 15, 2005, Defendant's attorney sent Plaintiff an unsigned copy of the "ABN AMRO North America, Inc. Consumer & Commercial Clients Shared Services Severance Pay Plan Document" (the "Plan Document"). *See id.* at ¶ 25; February 15, 2005 Chmiel/Reddy Letter, Ex. O to Reddy LR 56.1 Stmt. The letter explained that Defendant did not have access to official plan records because of a fire that had occurred at LaSalle's offices on December 6, 2004. *See* Reddy LR 56.1 Stmt. ¶¶ 22, 25. Defendant's attorney sent Plaintiff a signed copy of the Plan Document on March 4, 2005 after Defendant regained access to her office on February 28, 2005. *See* Def.'s LR 56.1 Stmt. ¶ 17; March 4, 2005 Chmiel/Reddy Letter, Ex. P to Reply App., at 1.[6] On April 20, 2005, Plaintiff filed a second discrimination charge against LaSalle, this time alleging that LaSalle retaliated for Plaintiff's original discrimination charge by denying his appeals to reinstate his severance pay. *See* April 20, 2005

---

[5] This court granted LaSalle's motion for judgment on the pleadings, without prejudice to Plaintiff's claim against Defendant Schellhorn, as ERISA authorizes suit against the plan administrator only.

[6] Citing the fact that Defendant was personally served with the summons in this case at "135 S. LaSalle St." on February 3, 2005, Plaintiff contends that Defendant's attorney lied in its February 15, 2005 letter when she stated that Defendant could not "re-enter the building" at 135 South LaSalle. *See* Plaintiff's Motion for Summ. J. at 4. The court concludes that Defendant's attorney simply misspoke. In this same letter, Defendant's attorney enclosed an unsigned copy of the plan document in a good-faith effort to comply with Plaintiff's request.

4

Discrimination Charge, Ex. R to Reply App.

**DISCUSSION**

A.    **Defendant Violated ERISA's Disclosure Requirements**

ERISA requires plan administrators to provide, upon a participant's written request, copies of plan descriptions "or other instruments under which the plan is established or operated." *See* 29 U.S.C. § 1024(b)(4); *see also Lowe v. SRA/IBM Macmillan Pension Plan*, No. 01 C 58, 2003 WL 1565841, *2–3 (N.D. Ill. Mar. 25, 2003)(section 1024 violated where defendant failed to provide plaintiff with a requested copy of the plan; imposing $50 per day penalty), *aff'd* 361 F.3d 335 (7th Cir. 2004).

Plaintiff requested a copy of the "original Plan document" on August 22, 2003. Reddy LR 56.1 Stmt. ¶ 14. Defendant argues that she did not violate ERISA because Plaintiff already possessed a copy of the SPD, which he received when LaSalle terminated his employment, and the SPD contains all the information in the Plan and more besides. *See* Def.'s Mem. of Law in Support of her Motion for Summ. J. and in Opp'n to Pl.'s Motion for Summ. J. (hereinafter "Def.'s Opp'n"), at 2–4. The Plan and the SPD are in fact substantively nearly identical, *compare* SPD *with* Plan Description, Ex. A to Schellhorn Decl.,[7] but the SPD expressly states that the Plan, not the SPD, is the source of the participant's rights. *See* SPD at 1. Plaintiff was entitled to copy of the Plan—the definitive source of his rights—even if he already possessed the information contained in Plan. *See* 29 U.S.C. § 1024(b)(4); *see also Hagen v. Veto Corp.*, No. 78-C-4634, 1980 U.S. Dist. LEXIS 14941, *2 (N.D. Ill. Oct. 3, 1980) (section §1024 violated even where plaintiff was an ERISA

---

[7]    The SPD contains additional information concerning plan participants' rights under ERISA and the proper procedure for appealing benefits determinations, *see* SPD at 5–6, 9–10, and contains slightly different language in the "Waiver and Release" section. *Compare* SPD at 4 ("Eligible employees *are encourage* to contact their personal attorney at their own expense to review the Waiver and Release Agreement form if they so desire"), *with* Plan Document at 4 ("Eligible employees *shall be advised* to contact their personal attorney at their own expense to review the Waiver and Release Agreement form if they so desire.").

5

expert, had originally drafted the plan documents and "already knew most of the information contained in the requested documents"). Accordingly, Defendant violated ERISA's disclosure requirements by failing to provide the a copy of the Plan within 30 days of Plaintiff's request. *See* 29 U.S.C. §1132(c)(1)(B).

**B.     Statutory Penalty**

ERISA authorizes penalties of up to $110 per day when a plan administrator fails to respond within 30 days to a participant's request for documents required to be produced under section 1024(b)(4). *See* 29 U.S.C. §1132(c)(1)(B); 29 C.F.R. 2575.502c-1 (increasing statutory penalties to $110 per day for violations occurring after July 29, 1997). A fine is not mandatory, *Fenster v. Tepfer & Spitz, Ltd.*, 301 F.3d 851, 858 (7th Cir. 2002), and the amount of the penalty, if any, is committed to the court's discretion. *See Ziaee v. Vest*, 916 F.2d 1204, 1210 (7th Cir. 1990). In exercising its discretion the court may consider the plan administrator's "conduct and intent" in refusing to provide the requested documents, as well as any prejudice to the plan participant. *Kleinhans v. Lisle Savings Profit Sharing Trust*, 810 F.2d 618, 622 (7th Cir. 1987); *Ziaee*, 916 F.2d at 1210 ("[T]he judge may, but need not, consider the provable injury when exercising the discretion."); *Ames v. Amer. Nat. Can. Co.*, 170 F.3d 751, 759 (7th Cir. 1999) (affirming district court's refusal to award a fine where "all relevant sections of the Severance Plan were reproduced verbatim in the employee handbook").

Plaintiff asserts that Defendant's bad-faith breach prejudiced his claim to recover unpaid severance pay and warrants the maximum statutory penalty. The court is not persuaded. Defendant did fail to respond to Plaintiff's requests in the timely manner required by ERISA, but there is no basis for concluding that Defendant "intentionally concealed" the Plan document, as Plaintiff alleges. *See* Pl.'s Mem. of Law in Opp'n to Defendant's Summ. J. Motion and Reply Brief in Support of his Summ. J. Motion (hereinafter, "Reddy Opp'n"), at 5–7. Plaintiff attempts to connect his October 2002 and July 2004 discrimination claims to Defendant's failure to provide a

6

copy of the Plan Document, but it would have served no purpose (nefarious or otherwise) for Defendant to conceal the Plan after it had already given Plaintiff an SPD containing virtually identical information. This observation does not excuse Defendant's delay in producing the Plan, but does suggest that the delay was not motivated by bad faith. *See* Schellhorn Decl. ¶ 8 (Defendant "believed [Plaintiff] had all the information he was requesting.").

Shortly after Plaintiff filed his complaint with the Illinois Human Rights Commission on July 1, 2004, Defendant provided a second copy of the SPD, but not the requested Plan. *Id.* at 6. Plaintiff argues that this shows "retaliatory motive," but again, the SPD and the Plan Document are virtually identical; providing a second copy of the SPD and labeling it the "Plan" may suggest carelessness or ineptitude, but it does not reflect deception or retaliation. Moreover, before filing this lawsuit, Plaintiff did not object that the second SPD did not comply with his request.

Plaintiff's argument that he was prejudiced by Defendant's delay in providing the requested Plan Document is likewise tenuous. *Id.* at 7. Armed with the information contained in the SPD, Plaintiff appealed LaSalle's decision to suspend his severance pay. *See* August 22, 2003 Reddy/Schellhorn Letter ("I bring to your notice the following provisions of the Severance pay plan and the relevant facts."). There is no reason to believe that Plaintiff would have proceeded any differently if he had had the SPD information in a different form. Plaintiff alleges that, if he had received a copy of the Plan Document when he requested it, he would have filed a claim with the EEOC to recover the suspended severance pay earlier. *See* Reddy Opp'n at 7. But Plaintiff has not alleged that this delay prejudiced this claim by, for example, preventing him from filing before the statute of limitations expired.

Although the court concludes that Plaintiff has overstated the degree to which he was prejudiced by Defendant's delay, he was nevertheless put to the trouble and frustration of making repeated requests for the Plan. *See Jackson v. E.J. Branch Corp.*, 937 F. Supp. 735, 742 n.6 (N.D. Ill. 1996)(finding prejudice where "plaintiffs have expended much time and effort trying to get

7

defendant to produce the documents at issue."). In light of this fact, and Defendant's excessive delay in producing the requested document, the court concludes that a modest penalty of $20 per day is appropriate. *See Jones v. UOP*, 16 F.3d 141, 145 (7th Cir. 1994)(affirming $20 per day penalty where plaintiff "was unable to show any harm from the delays in responding to his various requests.").

The only remaining issue is the period to which the per diem penalty applies. On February 15, 2005, Defendant's attorney produced an unsigned copy of the Plan Document, explaining that a fire at LaSalle's offices prevented access to the room containing the official copy. *See* February 15, 2005 Chmiel/Reddy Letter. The court concludes that this unsigned copy of the Plan Document is itself responsive to Plaintiff's request for the "original Plan document," and therefore denies Plaintiff's request to assess statutory penalties for the period between Defendant's production of this document and its production of the signed Plan Document on March 4, 2005. *See* Reddy Summ. J. Mem., at 4. Defendant argues that, after the December 6, 2004 fire, she could not produce the Plan Document due to "matters reasonably beyond [her] control," *see* 29 U.S.C. §1132(c)(1), and therefore the court should not assess statutory penalties for the period after December 6, 2004. Defendant's argument is relevant only to her failure to provide the "official" copy of the Plan Document before February 28, 2004, the day that Defendant regained access to the 33rd floor of 135 South LaSalle where she alleges that document was kept. Defendant does not allege that she could not have produced an "unofficial" copy of the Plan Document before that date; indeed, her attorney did provide an unsigned copy of the Plan Document on February 15, 2004, almost immediately after Plaintiff filed this lawsuit.

Accordingly, the court assesses statutory penalties for the period between and including September 23, 2003 (the thirty-first day after Plaintiff's first written request) and February 14, 2005 (the last day before Defendants produced the unsigned Plan Document), a total of 511 days. The court therefore imposes statutory penalties against Defendants totaling $10,220.00.

**CONCLUSION**

The court denies Defendant's motion for summary judgment (34), and grants Plaintiff's motion for summary judgment (16).

ENTER:

Dated: March 8, 2006

_____
REBECCA R. PALLMEYER
United States District Judge